[25 NYS3d 196]

# Michael J.D., Appellant, v Carolina E.P., Respondent.

First Department, February 18, 2016

**APPEARANCES OF COUNSEL**

*Michael J.D.*, New York City, appellant pro se.

*Law Office of Sergio Villaverde*, New York City (*Sergio Villaverde* of counsel), for respondent.

**OPINION OF THE COURT**

GISCHE, J.

The central issue in this appeal concerns whether, under the Child Support Standards Act (CSSA), the trial court properly directed that the plaintiff father pay certain expenses over basic child support, consisting of private school education, and summer, extracurricular and weekend activities. Since the CSSA was enacted, the Court of Appeals has repeatedly held that the dictates of the law, even when deviating from its formula, must be strictly followed (*Holterman v Holterman*, 3 NY3d 1 [2004]; *Bast v Rossoff*, 91 NY2d 723 [1998]; *Matter of Cassano v Cassano*, 85 NY2d 649 [1995]). Accordingly, we hold that because the trial court did not follow the precise requirements of the CSSA in determining that these additional costs should be paid over and above basic child support and that because there otherwise was insufficient support in the record for their payment, the trial court decision on child support should be modified.

The CSSA is codified in Family Court Act § 413 and Domestic Relations Law § 240 (1-b). These are analogous statutes, which set forth formulas that the Family and Supreme Courts must follow in calculating parents' child support obligations (*Cassano*, 85 NY2d at 652; *Rubin v Della Salla*, 107 AD3d 60, 66 [1st Dept 2013]). The CSSA first requires a calculation of child support amount (Domestic Relations Law § 240 [1-b] [b] [3]). It then allows for the payment of certain categories of enumerated add-on expenses, prorated according to the parents' relative incomes. The add-on expenses permitted are expressly stated within the statute, with their own specific standards and considerations justifying the making of such an award. The add-on expenses expressly addressed in the CSSA are: (1) child care expenses when a custodial parent is working, looking for work and/or engaged in an educational or training program that will lead to employment (Family Ct Act § 413 [1] [c] [4], [6]; Domestic Relations Law § 240 [1-b] [c] [4], [6]); (2) health insurance and unreimbursed medical expenses (Family Ct Act § 413 [1] [c] [5]; Domestic Relations Law § 240 [1-b] [c] [5]); and (3) educational expenses (Family Ct Act § 413 [1] [c] [7]; Domestic Relations Law § 240 [1-b] [c] [7]). Not expressly delineated as add-on expenses in the statute are summer, extracurricular and/or weekend activities. Basic child support, when calculated properly, is presumed to meet all the child's basic needs. Thus, the expenses of leisure, extracurricular and

enrichment activities, such as after-school clubs, sporting activities, etc., are usually not awarded separately, but are encompassed within the basic child support award. That is not to say that a court cannot order a parent to pay for these expenses over and above basic child support. If a court does so, however, it is a deviation from the basic statutory formula and requires an analysis under the commonly referred to paragraph "(f)" factors. Pursuant to Domestic Relations Law § 240 (1-b) (f) (Family Ct Act § 413 [1] [f]) "[u]nless the court finds that the non-custodial parent['s] pro-rata share of the basic child support obligation is unjust or inappropriate, which finding shall be based upon consideration of [certain] factors" enumerated in the CSSA, the child support calculation under the statute is presumptively correct. There are 10 enumerated factors to consider before deviating. They include the financial resources of the parties and child; the health, needs and aptitude of the child; the standard of living the child would have enjoyed had the household not been dissolved; tax consequences; nonmonetary contributions that a parent makes; educational needs of either parent; disparity in income of the parents; other child support obligation of the non-custodial parent; extraordinary expenses incurred in visitation; and any other factor that the court finds relevant (Family Ct Act § 413 [1] [f]; Domestic Relations Law § 240 [1-b] [f]). Although all the factors do not have to present, the court needs to articulate its reasons for making such a deviation from basic child support and relate those reasons to the statutory paragraph (f) factors (*Matter of Pittman v Williams*, 127 AD3d 755, 756-757 [2d Dept 2015]; *Matter of Gluckman v Qua*, 253 AD2d 267, 270-271 [3d Dept 1999], *lv denied* 93 NY2d 814 [1999]).

In this case the parties are the parents of one child, a boy, born 2008. The parties were never married and were not living together when the child was born. After plaintiff learned he had a son, defendant and the child moved into plaintiff's luxury apartment in Lower Manhattan. The parties were hopeful of continuing as a family and while living together, discussed marriage and the possibility of having a second child. They also discussed their son's future, and the possibility he would attend a private school. It was their expectation at that time that the child would enjoy the "best of everything." This living arrangement, however, was short-lived, lasting only four months (from May-Aug. 2009).

In August 2009, when the child was only eight months old, defendant and the child voluntarily moved out of the apart-

ment to reside in New Jersey without plaintiff. Although proceedings with various claims were commenced in the Supreme and Family Courts, ultimately the disputes were consolidated in the Supreme Court. By the time of trial, the only issues before the court were defendant's claims for child support and attorneys' fees and her motion to hold plaintiff in contempt.

The trial was held in February 2011. Although plaintiff was present at trial, only defendant testified. This was due to an earlier discovery sanction imposed by the court, precluding plaintiff from introducing evidence at trial concerning financial issues, and drawing adverse inferences on plaintiff's financial claims and favorable inferences on defendant's financial claims.[1]

Defendant's testimony mainly concerned their lifestyle as a family and the plans plaintiff and defendant had made for the child's future at that time. She also testified that plaintiff had enrolled the child (then only a few months old), in swimming classes with a private instructor, as well as in a weekend music class and a song and stories class. According to defendant, plaintiff had told her he wanted the child to attend a private school, such as Trinity, which she believed cost $22,000 per year. Once she and plaintiff separated, however, the lessons stopped. At the time of trial the child, then two years old, was not enrolled in any school program. Defendant testified that she intended to be a full-time mother to their son.

The trial court determined that plaintiff's adjusted gross income for child support purposes was $128,741.40. The court made this finding taking into account its preclusion order, yet nevertheless expressly rejecting defendant's argument that additional income should be imputed to plaintiff. The court stated that there was no evidence of undisclosed income and "father's substantial outstanding debt suggests that he does not enjoy the million dollar income she attributes to him." The trial court determined that defendant's income, for child support purposes, was $0, and that the parties' combined parental income was $128,741.40 and that the basic child support obligation was 17% of that amount, or $21,886.04 per annum ($1,823.84 per month). This obligation was prorated 100% to plaintiff and 0% to defendant. Add-on costs, for health insurance, unreimbursed

---

1. Although plaintiff had provided some financial discovery, he had not completely complied with the court's orders.

medical costs, education and extracurricular activities were awarded to be paid over and above basic child support and were allocated 100% to plaintiff and 0% to defendant.

No challenge is made to the amount awarded for basic child support, or the allocation of child support 100% to the plaintiff, or the direction that plaintiff pay for medical insurance and the unreimbursed medical costs for the child.

■ The trial court ordered that commencing with the 2013-2014 academic year until the child's graduation from high school, plaintiff is required to contribute 100% of private school tuition up to the cost of tuition for Trinity School in New York City.[2] Education expenses are an expressly enumerated add-on expense that may be awarded according to the specific statutory standard. Domestic Relations Law § 240 (1-b) (c) (7) (Family Ct Act § 413 [1] [c] [7]) provides that

> "Where the court determines, having regard for the circumstances of the case and of the respective parties and in the best interests of the child, and as justice requires, that the present or future provision of post-secondary, private, special, or enriched education for the child is appropriate, the court may award educational expenses. The non-custodial parent shall pay educational expenses, as awarded, in a manner determined by the court, including direct payment to the educational provider."

While a court may direct a parent to contribute to a child's educational expenses, "even in the absence of special circumstances or a voluntary agreement of the parties" (*Pittman,* 127 AD3d at 757), in order to do so, the court must consider the circumstances of the case, the circumstances of the respective parties, the best interests of the children, and the requirements of justice (*see* Family Ct Act § 413 [1] [c] [7]; Domestic Relations Law § 240 [1-b] [c] [7]; *Manno v Manno,* 196 AD2d 488, 491 [2d Dept 1993]). The trial court articulated no reason for ordering plaintiff to pay for private school, other than the informal discussions the parties had about their son's future while they briefly lived together, when the child was only a few months old. At the time of trial, the child was not yet school age, he was not enrolled in any regular educational program,

---

**2.** Although defendant testified that she thought tuition was $22,000 per annum, the court did not impose that figure as a cap. Actual tuition is double that amount (http://www.trinityschoolnyc.org/Page/Admissions/Tuition—Financial-Aid).

and there is no record that the child has any special needs or gifts (*see Friedman v Friedman*, 216 AD2d 204 [1st Dept 1995] [religious grade school appropriate given religion's integral part of the family's lifestyle]; *Matter of Prystay v Avildsen*, 251 AD2d 87 [1st Dept 1998] [child had attended private school for five years and had only one year left]). The circumstances of these parties and their son does not present a justifiable basis to impose a private school obligation on plaintiff. Plaintiff's income, as it was determined by the trial court even after drawing adverse inferences to his claims, was not at a sufficiently high level that it alone provided a sufficient basis for requiring private school for the child.

■ The trial court also ordered that, commencing with the 2012-2013 academic year until the child's graduation from high school, plaintiff is responsible for paying 100% of the child's extracurricular activities including after-school, weekend and summer activities. No benchmark was provided on what these activities could include and there was no cap on how much they could cost. These expenses are not expressly enumerated add-on expenses in the CSSA and the trial court failed to articulate why a deviation requiring their separate payment was appropriate in this case. While under certain circumstances these expenses may appropriately be considered an add-on for child care (Domestic Relations Law § 240 [1-b] [c] [4]; Family Ct Act § 413 [1] [c] [4]; *Sieratzki v Sieratzki*, 8 AD3d 552, 554 [2d Dept 2004]), here no recovery of child care costs was requested or warranted because defendant does not work or go to school and it is not her intention to do so. Consequently, in order for these additional expenses to be properly added to basic child support, the trial court needed to articulate the basis for the deviation. Only by articulating the factors relied on in deciding to deviate from the presumptively correct basic child support can a trial court justify its decision to deviate therefrom because the exercise of judicial discretion in child support awards is narrowly circumscribed (*Rubin*, 107 AD3d 60, 72; *see also Bohnsack v Bohnsack*, 185 AD2d 533, 535 [3d Dept 1992]). Given the parties' brief time living as a family, it cannot be said that a standard of living was established for the child. The trial court primarily based its award on the conclusion that had the family remained intact, the child, as the son of a lawyer, would have probably enjoyed a certain standard of living. The consideration of this solitary factor, coupled with the court's own determination of the parties' financial resources,

does not, however, support the addition of unlimited add-on extracurricular expenses that deviate from basic child support.

The trial court properly required that plaintiff obtain a life insurance policy to secure his support obligation in the event of plaintiff's death (Family Ct Act § 416 [b]; *see* Domestic Relations Law § 240 [1-b] [b] [2]). Because we have reduced the amount of child support plaintiff is required to pay, we also modify the amount of insurance required to achieve this objective. Plaintiff shall maintain a policy in the face amount of $500,000 until the child is 10 years old, in the face amount of $250,000 from the child's 10th birthday until the child is 18 years old and in the face amount of $125,000 from the child's 18th birthday until the child is 21 years old (*see Marfone v Marfone*, 118 AD3d 1488, 1489 [4th Dept 2014]).

The court providently exercised its discretion by directing plaintiff to pay defendant's attorneys' fees in these consolidated proceedings, encompassing filiation, custody, visitation and child support issues (Family Ct Act §§ 438 [a]; 536; Domestic Relations Law § 237 [b], [c]; *Anna-Sophia L. v Paul H.*, 52 AD3d 313 [1st Dept 2008]). However, the court improperly based its determination of the amount of the fees solely on the affirmations of counsel, despite plaintiff's objections (*Kelly v Kelly*, 223 AD2d 625, 626 [2d Dept 1996], *lv denied* 90 NY2d 802 [1997]). We therefore remand for a hearing to determine the amount of defendant's attorneys' fees.

Plaintiff's request that we entertain arguments pertaining to a contempt order issued by the court December 2, 2013, almost two years ago, is denied. Although plaintiff filed a notice of appeal, he admittedly failed to seek an enlargement of time within which to perfect it, and offers no explanation of the "exigent circumstances" that he claims prevented him from doing so.

We have considered plaintiff's remaining arguments and find them unavailing.

Accordingly the order of the Supreme Court, New York County (Ellen Gesmer, J.), entered on or about October 16, 2012, which, to the extent appealed from as limited by the briefs, after a trial, directed plaintiff to pay 100% of private school tuition for the parties' child, not to exceed the cost of the Trinity School's tuition, and 100% of the child's expenses for extracurricular, weekend, and summer activities, and to maintain a $1 million life insurance policy for the benefit of the child, with the benefit amount decreasing over time, and

awarded attorneys' fees to defendant, and order, same court and Justice, entered on or about April 22, 2014, which awarded attorneys' fees to defendant, should be modified, on the law, the direction to pay 100% of private school tuition and extracurricular, weekend, and summer activities expenses, and the amounts of the attorneys' fee awards, vacated, the specific amounts of the life insurance policy plaintiff is required to maintain reduced to require that plaintiff maintain a policy in the face amount of $500,000 until the child is 10 years old, in the face amount of $250,000 from the child's 10th birthday until the child is 18 years old, and in the face amount of $125,000 from the child's 18th birthday until the child is 21 years old, and the matter remanded for a hearing to determine the amount of reasonable attorneys' fees payable to defendant, and otherwise affirmed, without costs.

ACOSTA, J.P., SAXE, RICHTER and KAPNICK, JJ., concur.

Order, Supreme Court, New York County, entered on or about October 16, 2012, and order, same court and Justice, entered on or about April 22, 2014, modified, on the law, the direction to pay 100% of private school tuition and extracurricular, weekend, and summer activities expenses, and the amounts of the attorneys' fee awards, vacated, the specific amounts of the life insurance policy plaintiff is required to maintain reduced to require that plaintiff maintain a policy in the face amount of $500,000 until the child is 10 years old, in the face amount of $250,000 from the child's 10th birthday until the child is 18 years old, and in the face amount of $125,000 from the child's 18th birthday until the child is 21 years old, and the matter remanded for a hearing to determine the amount of reasonable attorneys' fees payable to defendant, and otherwise affirmed, without costs.